UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**INTERCONTINENTAL ELECTRONICS,
S.P.A.,**

       **Plaintiff,**

                                         Case No. 03-72424 & 03-72584

v.

                                         HONORABLE DENISE PAGE HOOD

**RICHARD G. ROOSEN, KAHN, KAHN,
GIBSON AND ROOSEN, AND EULER ACI
COLLECTION SERVICES, INC.,**

       **Defendants.**

_____/

**MEMORANDUM OPINION & ORDER GRANTING ROOSEN DEFENDANTS'
MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(c)**

**I.  INTRODUCTION**

Plaintiff filed this legal malpractice action as a result of a $2.5 million default judgment in a separate state court collection action in Michigan. The award was reduced to $1.5 million by the Michigan Court of Appeals. In their Motion, the Roosen Defendants assert that because the default judgment came nearly a year after they withdrew as attorney for Plaintiff, they should be dismissed from this action.

This matter is before the Court on Defendant Roosen's Motion to Dismiss Pursuant to F.R.C.P. 12(c), filed November 10, 2004. In response, Plaintiff filed a Motion for Extension of Time to File Response/Reply to Motion for Summary Judgment and Response to Roosen Defendants' 12(c) Motion to Dismiss on December 30, 2004. Defendants Roosen and Kahn, Kahn, Gibson and Roosen, P.C. (collectively, the "Roosen Defendants") submitted a Reply on January 12, 2005. Plaintiff filed a Surreply to Defendants' Motion on March 7, 2005. For the reasons set forth

below, the Court grants the Roosen Defendants' Motion to Dismiss.

## II.     STATEMENT OF FACTS

The Roosen Defendants filed a collection suit on behalf of Plaintiff and Plaintiff's insurance provider, Euler SIAC Societa Italiana Assicurazione Crediti ("Euler"). The suit was brought in Plaintiff's name only. (Pl.'s Resp. at 4). The debtors in that action were American Keyboard Products, Inc., Robert C. Kotz, and Gregory Wysocki, who also filed a counterclaim against Plaintiff on April 25, 2001. Plaintiff claims they were not notified by the Roosen Defendants of this counterclaim. (Id.)

On June 20, 2001, the Roosen Defendants moved to withdraw as Plaintiff's counsel. The Roosen Defendants claim to have served the motion to withdraw on Plaintiff in Italy. (Defs.' Mot. to Dismiss at 1). On July 18, 2001, the trial court granted the motion to withdraw. (Id.) In its order granting the motion to withdraw, the trial court ordered the Roosen Defendants to serve Plaintiff at its last known address in Italy. (Id.) The trial court's order also allowed Plaintiff thirty days to find new counsel. (Id.) Finally, the order warned that a default judgment would be entered if Plaintiff failed to appear at a scheduling conference scheduled for August 28, 2001. (Id. at 1-2).

The Roosen Defendants allege they mailed this order to Plaintiff on July 18, 2001. (Id. at 2). They further allege that the trial court sent two notices directly to Plaintiff, one informing Plaintiff of the pretrial conference, and the other of a case evaluation. (Id.) Plaintiff failed to appear at the August 28, 2001 scheduling conference. The trial court then entered two orders. The first dismissed Plaintiff's collection claim without prejudice. The second order entered a default on the counterclaim against Plaintiff.

American Keyboard Products, Inc., Robert C. Kotz, and Gregory Wysocki, defendants and

2

counter-plaintiffs in the state action, served Plaintiff with the trial court's two orders on September 12, 2001. (Id.) Plaintiff admits to having received a copy of the default in September of 2001. (Pl.'s Resp. at 5). Plaintiff asked Defendant Euler for an explanation of the order of default on October 25, 2001. (Id.) Defendant Euler responded by facsimile stating that "[a]fter reviewing the attached documents, it is recommended they be ignored since the case was dismissed and no further action was being taken." (Id.) (internal citation omitted). On November 9, 2001, Defendant Euler notified Plaintiff by letter that the action had been concluded. (Id.)

On May 1, 2002, nearly eight months after the trial court's order of default, the trial court granted an unopposed motion for entry of default judgment, entering a default judgment against Plaintiff for $2,552,012.97. On June 5, 2002, Plaintiff moved to have the default judgment set aside, claiming it never received notice of the order allowing the Roosen Defendants to withdraw as counsel. (Defs.' Mot. at 2). American Keyboard Products, Inc., Robert C. Kotz, and Gregory Wysocki opposed Plaintiff's motion on the basis that the proof of service established a presumption of receipt which Plaintiff had not successfully rebutted, and that Plaintiff did not move to set aside the default during the September 2001 to May 2002 time period. The trial court denied Plaintiff's motion, holding that the explanations proffered did not "overcome the numerous notices and attempts to get the attention of" Plaintiff. (Id. at 3) (internal citation omitted).

Plaintiff appealed to the Michigan Court of Appeals. The appellate court affirmed the underlying default, but reduced the amount of the default judgment to $1,552,012.97. (Pl.'s Resp. at 6). The Roosen Defendants argue that collateral estoppel bars Plaintiff from pursuing its claim against them. These Defendants also allege that the default judgment was not entered as a result of their conduct, but rather, because of Plaintiff's own conduct and reliance on Defendant Euler's

3

representations.

## III. STANDARD OF REVIEW

Defendants cast their Motion as a motion to dismiss. Plaintiff argues that Defendants' Motion is more appropriately classified as a motion for summary judgment. The respective standards are set forth below.

### A. Motion to Dismiss

Motions to dismiss pursuant to Fed. R. Civ. P. 12(c) are analyzed under the same standard as Rule 12(b)(6) motions. *See, e.g. Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987); *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). A court takes the factual allegations in the Complaint as true when evaluating the propriety of dismissal under Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp.2d 575, 577 (E.D. Mich. 1999). Further, the court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).

### B. Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury

could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

## IV. LAW & ANALYSIS

### A. Classification of Defendants' Motion

Plaintiff argues that Defendants' Motion should be converted to a motion for summary judgment, "because it introduces additional matters outside the scope of the pleadings." (Pl.'s Resp.

5

2:03-cv-72424-DPH-SDP   Doc # 57   Filed 05/25/05   Pg 6 of 12   Pg ID 777
at 9). Plaintiff asserts this Court is limited to considering the outcomes of the underlying state court proceedings, and considering any additional materials from those proceedings support conversion of Defendants' Motion to one for summary judgment. (Id.)

Defendants correctly refute Plaintiff's claim by pointing to the fact that the Sixth Circuit allows courts to consider materials that are public records or are otherwise appropriate for the taking of judicial notice. *See, e.g. New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). Courts are not limited to the outcomes of underlying cases. *See New England Health Care*, 336 F.3d at 501 (considering the complaint from a related case); *Jackson*, 194 F.3d at 745 (considering documents filed in the earlier state court action).

Defendants attached seventeen exhibits to their Motion to Dismiss. Fifteen of them are public records from the underlying state court actions, and may be considered by the Court in deciding a motion to dismiss. *Id.* One of the remaining exhibits is a translation of the insurance contract at issue, a document that was attached to Plaintiff's Complaint and is therefore a part of the pleadings. The last exhibit is an admission of the co-Defendant. It is admittedly not a part of the public record or the pleadings. (Defs.' Reply at 2). This exhibit will not be considered in deciding the Motion to Dismiss. If the exhibit were necessary to a decision, then Defendants' Motion would be converted to a motion for summary judgment. Such is not the case. The proper remedy when an exhibit is not a part of the pleadings or public record is to exclude the exhibit and to otherwise consider the merits of the motion. Fed. R. Civ. P. 12(c).

Sixteen out of the seventeen exhibits attached by Defendants to its Motion are properly before the Court. The final exhibit is excludable. Defendants' Motion is one for dismissal pursuant

to Rule 12(c), and not a motion for summary judgment.

### B.     The State Court Decisions & Claim Preclusion

The Roosen Defendants assert that the doctrine of collateral estoppel estops Plaintiff from denying that it received notice of the order allowing them to withdraw and ordering Plaintiff to appear at the scheduling conference. (Defs.' Mot. at 5).

In *Whitfield v. City of Knoxville*, 756 F.2d 455 (6th Cir. 1985), the Sixth Circuit found that res judicata principles apply where a second lawsuit involves the same parties, acting in the same capacities, and touching the same subject matter as the first suit. Res judicata has both a general and a specific meaning. *Dodrill v. Ludt*, 764 F.2d 442, 443 (6th Cir. 1985).

> In its general sense it refers to the preclusive effects of former proceedings. This broad category is divided into two more specific groups: "res judicata" in its narrower sense, and "collateral estoppel." Res judicata, in its narrow sense, refers to claim preclusion. Collateral estoppel refers to issue preclusion. Since the differences between the two require significantly different analyses, it is important to keep clear which is being discussed.

*Id.* *Whitfield* also distinguishes the collateral estoppel doctrine, which precludes litigation of an issue already resolved in prior litigation, from res judicata. In contrast to collateral estoppel, res judicata bars litigation in a second suit of claims that were unsuccessfully raised or that should have been raised, but were not, in the prior suit. *Whitfield,* 756 F.2d at 459 n. 5.

When considering the preclusive effect of a state court judgment, federal courts must apply that state's law. *See Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 394 (6th Cir. 2002). In Michigan, there are three fundamental requirements for collateral estoppel to attach: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. *See Monat v. State Farm Ins. Co.*, 469 Mich.

679, 682-84 (2004).  *Monat* held that in situations where collateral estoppel is being used defensively, the mutuality requirement need not be satisfied.  *Id.*

For collateral estoppel to apply in this case, it must be demonstrated that Plaintiff had a full and fair opportunity to litigate the issue of notice, and that this issue was essential to the state court's final judgment.  The Roosen Defendants point to Plaintiff's June 5, 2002 motion to set aside the default judgment, wherein Plaintiff argued that it had not received a copy of the July 18, 2001 order. (Defs.' Mot. at 7).  Plaintiff again made this argument to the Michigan Court of Appeals.  Both courts denied Plaintiff's contention.  The court of appeals wrote as follows:

> Plaintiff [Intercontinental] first argues that it was denied its rights to due process because it never received notice of the pretrial conference, at which it failed to appeal, triggering the entry of the default against it.  We find no basis for relief.
> \* \* \*
> There is a presumption of receipt by the addressee of mail addressed, stamped, and entrusted to the United States postal service for delivery.  This presumption can be overcome by direct and positive testimony regarding nonreceipt.
> \* \* \*
> Plaintiff asserts that statements in an affidavit by one of its officers rebutted the presumption that plaintiff received a copy of the order setting the pretrial conference date.  However, the statements did not constitute the type of positive, detailed, and direct testimony necessary to overcome the presumption that a document properly mailed was received.  Indeed, the affiant in question did not directly state that plaintiff never received notice of the pretrial conference date.  Moreover, although the affiant stated that plaintiff received no correspondence within a certain period from its attorney or its attorney's law firm, he failed to state that he was the person who regularly receives the mail for the company or to provide some other basis for his knowledge.  Therefore, the general presumption of receipt by plaintiff of the July 18, 2001 order, which was properly addressed, postage paid, and entrusted to the United States postal service for delivery, applies.  Plaintiff was appropriately served with the order setting the pretrial conference date and was not denied its rights to due process.

*Intercontinental Electronics, S.P.A., v. American Keyboard Products, Inc., Robert C. Kotz and Gregory Wysocki*, Mich. Ct. App. No. 242455, 1-2 (March 18, 2004) (unpublished).  It is clear that Plaintiff has had at least one, and most probably two, opportunities to litigate its assertion that it did

8

not receive notice of the July 18, 2001 order. Both the trial court and the court of appeals rejected this argument, holding as a matter of law that Plaintiff was presumed to have received the order. There can be little doubt that the state courts' rulings on the notice issue were essential to their judgments. Michigan courts have held that a default judgment has collateral estoppel effect where the issues are sufficiently litigated. *See Braxton v. Litchalk*, 55 Mich. App. 708, 714-17 (1974). Plaintiff is therefore barred from now arguing whether it received notice of the July 18, 2001 order.

### C.     The Roosen Defendants' Subsequent Liability

Using collateral estoppel as a shield on the notice issue, the Roosen Defendants allege that they are freed from any subsequent liability to Plaintiff. Assuming the July 18, 2001 order was actually received, Plaintiff was advised of the pre-trial conference, and the consequences for failing to appear.

Plaintiff raises the issue of whether it was a proper party to the underlying state court litigation, claiming that Euler was the real party in interest. (Pl.'s Resp. at 15-18). Plaintiff claims that the Roosen Defendants improperly prosecuted the state court collection action solely in Plaintiff's name, and that but for this improper prosecution, the default judgment would never have been entered against Plaintiff. (Id. at 16).

Whether or not Plaintiff's above argument has any merit is not relevant to the liability of the Roosen Defendants. As of late July, 2001, Plaintiff knew that it was a party to the litigation, that it was no longer represented by counsel, that a counter-claim had been filed against it, that a default might be entered if Plaintiff did not secure new counsel within thirty days, and that a default would be entered as a matter of course if Plaintiff failed to appear at the pre-trial conference scheduled on August 28, 2001.

9

Notice of the trial court's July 18, 2001 order alone would more than likely be sufficient to cut off the Roosen Defendants' liability in this matter. However, it is undisputed that Plaintiff received *actual* notice of the default in September of 2001. Plaintiff did not communicate with the Roosen Defendants after this time. The Roosen Defendants note that "[h]ad Intercontinental retained counsel at this point [after September of 2001], the trial court would have properly set aside the Default. *Reed v. Walsh*, 170 Mich. App. 61, 66 (1988). At the very least, Intercontinental would have been entitled to a trial on the issue of damages." (Defs.' Mot. at 10). Instead, Plaintiff relied on statements made by Defendant Euler, and ignored the default until a default judgment was entered some seven and a half months later. There is nothing in the record to support the Roosen Defendants' liability for Defendant Euler's assertions to Plaintiff.

### D.     Attorney-Client Relationship

In its Response, Plaintiff vigorously argues whether a proper attorney-client relationship existed between it and the Roosen Defendants. (Pl.'s Resp. at 12-13). Plaintiff maintains that

> [T]he fact remains that there was no authorization by Intercontinental for KKG&R [the Roosen Defendants] to act independently as its attorney, file a complaint in its name, or to respond to pleadings directed to it. If this were the case, an engagement letter or agreement between KKG&R and Intercontinental should reflect its authority to do so. However, no such letter or agreement exists.

(Id.)

Notwithstanding the veracity of Plaintiff's arguments, the Court is still required to dismiss this Complaint on the pleadings. (See Defs.' Reply at 1.) Collateral estoppel bars Plaintiff from raising the issue regarding whether it received proper notice of the Roosen Defendant's withdrawal from the underlying state action. In addition, the Court has already held that there is nothing in the record to support the Roosen Defendants' liability for Defendant Euler's assertions to Plaintiff. Plaintiff

10

has not demonstrated any act or omission on the part of the Roosen Defendants upon which liability for the state court default judgment can attach.

### D. Plaintiff's Motion for Enlargement of Time to Respond

Relying on the argument that the Roosen Defendants were not authorized to act on its behalf, Plaintiff claims that it is entitled to discovery. (Pl.'s Resp. at 13). Allowing such discovery would undermine the very purpose of a Rule 12(c) motion to dismiss: even if Plaintiff could show that all of its assertions are true, it would still not be entitled to relief. Therefore further discovery is unwarranted with respect to the Roosen Defendants.

### V. CONCLUSION

For the foregoing reasons, the Court GRANTS the Roosen Defendants' Motion to Dismiss.

Accordingly,

IT IS ORDERED that the Roosen Defendants' Motion to Dismiss **[Docket No. 25, filed November 10, 2004]** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Enlargement of Time to Respond **[Docket No. 32, filed December 30, 2004]** is DENIED.

IT IS FURTHER ORDERED that the remaining parties in this action, Plaintiff and Defendant Euler, appear for a scheduling conference on July 7, 2005, at 3:45 p.m.

    /s/ Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED:   May 25, 2005

12

DATED:   May 25, 2005